## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

 JAMES OLDHAM, Individually and
on behalf of all others similarly
situated,

      Plaintiff,

v.                                                             No. 2:20-cv-1166-KWR-GBW

NOVA MUD, INC., RUSCO
OPERATING, LLC, and RIGUP,
INC.,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Defendant Nova Mud, Inc.'s Motion to Dismiss

and/or Compel Arbitration, or in the alternative stay, filed January 11, 2021. **Doc. 8.**  Having

reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is

not **WELL-TAKEN** and, therefore, is **DENIED**.

## BACKGROUND[1]

This is a putative class action under the Fair Labor Standards Act ("FLSA") and New

Mexico Minimum Wage Act ("NMMWA").  Plaintiff alleges that he and other similarly situated

individuals worked in excess of forty hours in a single workweek, but were not paid overtime as

required by the FLSA, allegedly as a result of misclassification of himself and collective members

as independent contractors.

Plaintiff executed an independent contractor agreement with now dismissed parties RigUp

---

[1] To the extent that Defendant provides a factual recount, it devotes only a few paragraphs to a brief chronology of Plaintiff's execution of the agreement with other defendants and the subsequent dismissal of those defendants from the action. **Doc. 8 at 1-2.** Accordingly, the facts are essentially undisputed by the parties.

Inc. ("RigUp") and its wholly owned subsidiary, RUSCO Operating, LLC ("RUSCO"), to perform freelance services for third party companies.  One of those companies was Defendant.  Plaintiff now alleges that Defendant violated the FLSA and NMMWA by failing to pay him and others overtime.

<u>Plaintiff Signs up to the RigUp App</u>

On July 20, 2018, Plaintiff, a resident of Texas, signed up to RigUp's website and application to access job postings and apply to potential employers as a mud engineer. RigUp, incorporated in Delaware with its principal place of business in Texas**,** operates as a workplace bidding platform largely in the oil and gas industry and connects individuals who have signed up to its website or app with potential employers. Signing up to the RigUp App does not guarantee employment at any time or in any particular location.  It is undisputed that once a company does hire a worker through the RigUp App, RigUp and its wholly-owned subsidiary, RUSCO, perform human resources tasks such as background checks and payroll functions.[2]

During the registration process, Plaintiff executed an "AGREEMENT BETWEEN INDEPENDENT PROFESSIONAL & RIGUP FOR USE OF RIGUP SERVICE" ("the Agreement"). In the relevant portions, the Agreement provides:

This Agreement Between Independent Professional & RigUp For Use Of RigUp Service (the "Agreement") constitutes a binding agreement between you, an independent professional ("you") and RUSCO Operating, LLC, a wholly owned subsidiary of RigUp, Inc. ("RigUp" "us" or "we") governing your use of the Service (as defined in the RigUp Terms of Service at https://www.rigup.com/tos) to provide freelance services to third party companies (each a "Company" or collectively the "Companies"). You hereby agree: (a) to comply with this Agreement; and (b) that you have read, understand, and agree to (i) the RigUp Terms of Service located at https://www.rigup.com/tos ("Terms"),...

1. **Independent Professional.** By signing this Agreement, you are asserting that you are an independent professional and entrepreneur who wishes to: (a) digitize and modernize your business; (b) be introduced to new clients by RigUp; and (c) engage RigUp for its

---

[2] On January 8, 2021, Plaintiff voluntarily dismissed RigUp and RUSCO from the lawsuit without prejudice. **Doc. 7.** Plaintiff states that "No action or arbitration is pending by Plaintiff against the dismissed entities." **Doc. 11 at 2 fn 5.**

Service to accomplish these entrepreneurial goals.

2. **General.** RigUp provides the Service to digitize and market your business, including connecting you with Companies. RigUp does not provide professional services. RigUp offers information and a method for Companies to obtain, and you to provide, services, but does not and does not intend to provide such services. RigUp and you intend for you to provide services to Companies strictly as an independent professional, and not as an employee, worker, agent, joint venture, partner or franchisee of RigUp or any Company for any purpose.

5. **Interactions with Companies.** Any interactions or disputes between you and a Company are solely between you and that Company. RigUp and its licensors shall have no liability, obligation or responsibility for any interaction between you and any Company.

8. **Relationship.** Neither this Agreement, nor your completion of Projects will create an association, partnership, joint venture, or relationship of principal and agent, master and servant, or employer and employee, between you and RigUp. Without limiting the generality of the foregoing, you are not authorized to bind RigUp to any liability or obligation or to represent that you have any such authority. You acknowledge and agree that you are obligated to report as income all compensation received by you from Companies arising out of or related to the Service. You agree to and acknowledge the obligation to pay all self-employment and other taxes on such income.

10. **Indemnification.** You will indemnify and hold the RigUp Parties and Company harmless from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses (including reasonable legal fees) arising out of or resulting from (a) bodily injury, death of any person, theft or damage to real or tangible, personal property resulting from your acts or omissions, (b) bodily injury, death or property damage suffered by you or your employees, (c) your breach of any representation or warranty in this Agreement, (d) any negligent, reckless or intentionally wrongful act by you or your assistants, employees, contractors or agents, (e) a determination by a court or agency that you are an employee of RigUp or a Company, or (f) any claim by a Company arising from or related to you or your assistants, employees, contractors or agents services for such Company.

14. **Dispute Resolution.** You acknowledge and agree that the terms of this Agreement are subject to Section 24 of the Terms.

**Doc. 9, Ex. A.**

Section 24 of the Terms of Service, incorporated by reference in the Agreement, contained the

following agreement to arbitrate:

**24. Dispute Resolution and Arbitration**

a. Generally. In the interest of resolving disputes between you and RigUp in the most expedient and cost effective manner, you and RigUp agree that every dispute arising in connection with these Terms will be resolved by binding arbitration. Arbitration is less formal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, may allow for more limited discovery than in court, and can be subject to very limited review by courts. Arbitrators can award the same damages and relief that a court can award. This agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of these Terms, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of whether a claim arises during or after the termination of these Terms. YOU UNDERSTAND AND AGREE THAT, BY ENTERING INTO THESE TERMS, YOU AND RIGUP ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION.

b. Exceptions. Despite the provisions of Section 24.a., nothing in these Terms will be deemed to waive, preclude, or otherwise limit the right of either party to: (a) bring an individual action in small claims court; (b) pursue an enforcement action through the applicable federal, state, or local agency if that action is available; (c) seek injunctive relief in a court of law; or (d) to file suit in a court of law to address an intellectual property infringement claim….

*Id.*, Ex. B, § 24.

The Terms of Service also included a provision with respect to third party disputes:

**17. Third Party Disputes.** RIGUP IS NOT AFFILIATED WITH ANY SERVICE PROVIDER, OPERATOR, VENDOR, OR THIRD PARTY SERVICE, AND ANY DISPUTE YOU HAVE WITH ANY SERVICE PROVIDER, OPERATOR, VENDOR, THIRD PARTY SERVICE, OR OTHER THIRD PARTY, INCLUDING, WITHOUT LIMITATION, ANY OTHER USER OF THE SERVICE, IS DIRECTLY BETWEEN YOU AND THAT THIRD PARTY, AND YOU IRREVOCABLY RELEASE THE RELEASED PARTIES…

*Id.*, § 17.

<u>Defendant and RigUp/RUSCO's Master Services Agreement</u>

On November 3, 2017, Defendant executed a Master Services Agreement ("MSA") and Work Order with RUSCO and its "affiliate" RigUp for the purpose of finding potential employees through the RigUp app. Defendant is incorporated in New Mexico with a principal place of business in Hobbs, New Mexico. The MSA appears silent on arbitration and provides that Texas law governs the agreement. ("**APPLICABLE LAW:** THIS AGREEMENT (INCLUDING ANY WORK ORDER) WILL BE INTERPRETED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT THE APPLICATION OF CHOICE OF

4

LAW RULES.). **Doc 9-3, Ex. C, § 13.**[3] The MSA states that "RUSCO agrees to use commercially reasonable efforts to cause to be performed or provided by Subcontractors the Services[4] as set forth in the applicable Work Order[5] (the *"Work")."* ***Id.*, § 1.1.** With respect to compensation the MSA provides:

> **4.1    Compensation** & **Invoicing:** Unless otherwise agreed in writing, RUSCO agrees to use commercially reasonable efforts to invoice Company on at least a monthly basis for the Work performed in the preceding month and for any other applicable charges, providing supporting documentation acceptable in industry practice to support the amount(s) charged, and, subject to Section 4.2, Company shall pay such amount due within thirty (30) days of the date of such invoice.

***Id.*, § 4.1**

Finally, the MSA denotes the status of the "Subcontractors" performing services for Defendant "Company," as independent contractors:

> **INDEPENDENT CONTRACTOR:** Company acknowledges and agrees that (i) any Services performed or provided by Subcontractor in the performance of work in connection with a Work Order are performed or provided by Subcontractor as an independent contractor and under the sole supervision, management, discretion, operation, maintenance, and control of Subcontractor and that nothing herein shall be construed as giving RUSCO control over, or the right to control, such work; (ii) RUSCO will look to Subcontractor for results only and RUSCO will have no right to direct Subcontractor in the performance, operation, maintenance, or supervision of such work, or as to the manner, means, and method in which such work is performed, operated, maintained, or supervised; and (iii) the number and selection of employees, contractors, subcontractors, technicians, specialists, suppliers, and labor used by Subcontractor in performing such work, the hours of labor, and the compensation for services performed thereby shall be determined by Subcontractor, and all such labor shall be employees or contractors of Subcontractor and neither Subcontractor nor anyone employed or engaged by Subcontractor shall be deemed to be an employee, agent, servant, or representative of RUSCO.

---

[3] The MSA additionally provides the following with respect to dispute resolution: **16.4. Dispute Resolution:** Any action or proceeding seeking to enforce any provision of, or based on any right arising out of or related in any way to this Agreement may be brought against any of the Parties in the state or federal courts of the State of Texas, County of Travis, or in the United States District Court for the Southern District of Texas, and each of the Parties hereby consents to the jurisdiction of such courts (and the appropriate appellate courts) in any such action or proceedings and hereby waives any objection to venue.
**Doc. 9-3, Ex. C, § 16.4.**
[4] Pursuant to the MSA, " '*Services*' means all services, labor, and work performed by a Subcontractor in the performance of work in connection with a Work Order." ***Id.*, § 1 ("Definitions")**
[5] Pursuant to the MSA, "'***Work Order*'** means an agreement, in form and substance acceptable to RUSCO, between Company and RUSCO setting forth the details of Services to be performed by a Subcontractor in the performance of work as set forth therein." *Id.*

*Id*., § 10.

On or about February 2019, Defendant hired Plaintiff as a mud engineer through the RigUp App. It is undisputed that Plaintiff performed work for Defendant in both New Mexico and Texas. Plaintiff alleges that he was paid "a day rate of approximately $700 per day or hourly wages in the amount of $58.33 without any overtime pay in connection with work for Defendants." **Doc. 1 at 3, ¶ 13.** The Complaint alleges that Defendant trained mud engineers regarding performance of services, set their schedules, assigned work locations and reviewed and verified timesheets. *Id*., ¶ **59.** Plaintiff alleges that the timesheets "were submitted through RigUp, and ultimately paid through RUSCO." *Id*.

## DISCUSSION

Defendant seeks to dismiss the complaint "and/or Compel Arbitration, or in the alternative stay," pursuant to (1) lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), (2) for improper venue under Fed. R. Civ. P. 12(b)(3), "and/or" (3) for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16.[6] **Doc. 8 at 1.** Defendant seeks to enforce the Agreement's arbitration clause against Plaintiff. At issue is whether Defendant, a non-signatory to the Agreement, can enforce the arbitration clause under the theories of (1) equitable estoppel and (2) third-party beneficiary.  The Court concludes that, in light of the particular facts of this case, it cannot.

## I.     Federal Arbitration Act.

The Federal Arbitration Act permits a party to move to compel arbitration when an

---

[6] Defendant states that it "files this motion under multiple rules out of an abundance of caution," noting that there is a circuit split regarding under which subsection of Fed. R Civ. P 12 a motion to compel arbitration should be brought. **Doc. 8 at 1, fn. 1.** Defendant submits that "The First, Fifth, Tenth, and D.C. Circuits have yet to definitely address this issue. Regardless of which rule applies, if any, the outcome is the same—the Court should dismiss this action and compel arbitration." *Id*.

opposing party refuses to arbitrate issues covered by a valid arbitration agreement. 9 U.S.C. § 4. "Under the FAA, 9 U.S.C. § 1–16, arbitration is a matter of contract, and courts must place[ ] arbitration agreements on an equal footing with other contracts, and ... enforce them according to their terms." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) (quoting *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 67, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) (internal quotation marks omitted)). Plaintiff does not appear to dispute that the claims fall within the Agreement's scope. Rather, Plaintiff argues that there is not a valid agreement to arbitrate between Plaintiff and Defendant.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir.2003) (quoting *AT & T Techs.*, 475 U.S. at 648, 106 S.Ct. 1415) (internal quotation marks omitted). "Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). "[T]o determine whether a party has agreed to arbitrate a dispute," the Court applies "ordinary state-law principles that govern the formation of contracts." *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013). Generally, agreement or mutual assent is essential to a contract. *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017). Arbitration involving a non-signatory may be required under the following theories: (1) incorporation by reference; (2) assumption, (3) agency, (4) veil piercing/alter ego, (5) estoppel, and (6) third-party beneficiary. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S. Ct. 1896, 1902, 173 L. Ed. 2d 832 (2009); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005).

Although the presence of an arbitration clause generally creates a presumption in favor of

arbitration, *see ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir.1995) ("If a contract contains an arbitration clause, a presumption of arbitrability arises, particularly if the clause in question contains ... broad and sweeping language."), "this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir.2002)

A motion to compel arbitration is treated similarly to a motion for summary judgment. *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014).

## II. The Court declines to compel arbitration.

### A. Choice of laws.

The parties dispute whether Texas or New Mexico law applies. The Agreement does not expressly provide which state law governs its provisions. Plaintiff asserts that "it is clear" that Texas law applies because the Agreement was executed between Plaintiff, a resident of Texas, and RigUp, a business with its principal place of business in Texas. **Doc. 11 at 6.** Plaintiff states that it filed this action in New Mexico "because [Defendant's] principal place of business is in New Mexico, and there could be no argument that this Court could not exercise personal jurisdiction over [Defendant]." *Id.*

### Federal Question Choice of Law

Generally, "federal choice-of-law principles are used in resolving federal causes of action." *Ellis v. Liberty Life Assurance Co. of Bos.*, No. 19-1074, 2020 WL 2463044, at *8 (10th Cir. May 13, 2020). "[C]ircuit courts have concluded that a federal common law choice-of-law analysis should be conducted when the issue is a federal question, and ... courts have relied upon the Restatement (Second) of Conflicts of the Law for the content of federal common law." *Grand Isle Shipyard, Inc. v. Seacor Marine*, LLC, 589 F.3d 778, 809 (5th Cir. 2009) (Owen, P., dissenting).

The Restatement (Second) of Conflicts applies the most significant contacts test when, as here, the

Agreement does not contain a choice of law provision:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties [ ], the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188 (1971).

In turn, Section 6 of the Restatement (Second) provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

*Id.* § 6.; *See Bock v. Salt Creek Midstream LLC*, 2020 WL 3989646, at *17 (D.N.M. July 15,

2020), *report and recommendation adopted*, *Bock v. Salt Creek Midstream LLC*, 2020 WL

5640669 (D.N.M. Sept. 22, 2020).

The evidence in the record is limited such that it is difficult for the Court to make a detailed

analysis of contacts pursuant to §188. In evaluating the Texas contacts, the Court notes the

following: (1) Plaintiff is a resident of Texas; (2) Plaintiff signed up to the RigUp app in Texas;

(3) RigUp is a Delaware corporation with its principal places of business in Texas; and (4) Plaintiff performed work in both Texas and New Mexico. Plaintiff attests that he performed over 50% of his work for Defendant in Texas. **Doc. 11, Ex. A (Oldham Decl., ¶ 4).** Defendant contests this assertion to the extent that it notes that Plaintiff relies solely on his own affidavit's "conclusory" statement to account for this percentage. This is true. Equally true though, is that Defendant does not provide anything to rebut Plaintiff's assertion. Additionally, there is conflicting information about dismissed party RUSCO. The Complaint asserts that it is a Delaware LLC with its principal place of business in Aztec, New Mexico, while an exhibit in the record from a 2017 Texas Franchise Tax Public Information Report of RUSCO, filed with the Secretary of State for the state of Texas, and signed by Xuan Yong as RUSCO President on September 25, 2017 demonstrates that its principal place of business during that time period was in Austin, Texas.[7] **Doc. 11-2, Ex. 2.** Furthermore, the Court notes that in the fees section of the arbitration provision, the Agreement states "Any arbitration hearing will take place at a location to be agreed upon in Travis County, Texas" albeit with the caveat that "if the claim is for $10,000 or less, you may choose whether the arbitration will be conducted: (i) solely on the basis of documents submitted to the arbitrator; (ii) through a non-appearance based telephone hearing; or (iii) by an in-person hearing as established by the AAA Rules in the county (or parish) of your billing address." **Doc. 9-1, Ex. B § 24 (e).** Finally, while not dispositive, Plaintiff does correctly note that the MSA executed between Defendant and RigUp/RUSCO contains a dispute resolution provision explicitly designating Texas as the appropriate forum.[8]

---

[7] The Complaint also states that "Defendant RUSCO may be served with summons through its registered agent Cogency Global Inc., 1012 Marquez Place, Suite 106B, Santa Fe, New Mexico 87505." **Doc. 1, ¶ 38.**

[8]"**Dispute Resolution:** Any action or proceeding seeking to enforce any provision of, or based on any right arising out of or related in any way to this Agreement may be brought against any of the Parties in the state or federal courts of the State of Texas, County of Travis, or in the United States District Court for the Southern District of Texas, and

On the other hand, (1) Defendant is a New Mexico corporation with its principal place of business in Hobbs, New Mexico and (2) Plaintiff filed his complaint in New Mexico alleging violations of federal and New Mexico law. Certainly, New Mexico has an interest in the application of its own statutes, in this instance the NMMWA, as well as in protecting its workers. Defendant also notes that Plaintiff does not invoke any Texas statutory law.

While the limited evidence available in the record makes this a close question, the Court is of the opinion that, on balance, there are more substantial Texas contacts at play given the allegation that a substantial portion of the work was performed in Texas and considering the citizenship of the various parties under Restatement (Second) § 188 and §6. Nevertheless, the Court finds that it would reach the same result of denying the motion were it to apply New Mexico law.

### Third Party Beneficiary

Although it did not sign the Agreement, Defendant argues that it may compel arbitration against Plaintiff under the third-party beneficiary theory.  The Court disagrees.

### B.    Relevant Law

The Court looks to state contract law to determine whether "a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate." *Arthur Andersen*, 556 U.S. at 624. Generally, "there is a presumption against conferring third party beneficiary status on noncontracting parties." *S. Tex. Water Auth. v. Lomas,* 223 S.W.3d 304, 306 (Tex. 2007); *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006) ("[A]rbitration agreements apply to nonsignatories only in rare circumstances."). However, "an entity that is not a party to a contract may nevertheless enforce the contract as a third-party beneficiary if it

---

each of the Parties hereby consents to the jurisdiction of such courts (and the appropriate appellate courts) in any such action or proceedings and hereby waives any objection to venue.")).

establishes that (1) the parties to the contract intended to secure a benefit to it and (2) entered into the contract directly for its benefit." *ConocoPhillips Co. v. Graham*, No. 01-11-00503-CV, 2012 WL 1059084, at *6 (Tex. App. Mar. 29, 2012), *citing In re Palm Harbor Homes,* 195 S.W.3d at 677; *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 635 (Tex. 2018) (citations and quotation marks omitted) ("arbitration agreements may also be enforced by third-party beneficiaries, so long as the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit.").  Stated another way, "[a] third-party beneficiary may enforce a contract to which it is not a party if the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006).

"While the contract need not have been executed solely for the benefit of the third-party, the benefit to the third-party must be more than merely incidental to the contract. In determining whether the parties intended to benefit a third-party, courts look to the entire agreement, giving effect to all of its provisions." *ConocoPhillips,* 2012 WL 1059084, at *6; *In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 776 (Tex. App.—Beaumont 2008, pet. denied).  "The benefit must be more than incidental, and the contracting parties' intent to confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *Jody James*, 547 S.W.3d at 635 (quotation marks and citations omitted); *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) ("A court will not create a third-party beneficiary contract by implication. The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied. Consequently, a presumption exists that parties contracted for themselves unless it "clearly appears" that they intended a third party to benefit from the contract.") (internal quotation marks

and citations omitted).

**C.    Analysis**

Defendant argues that it is a third-party beneficiary and therefore entitled to enforce the arbitration provision against Plaintiff.  The Court disagrees, as there is no indication that Plaintiff and RigUp intended to give third parties the benefit of the arbitration agreement.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Spahr v. Secco,* 330 F.3d 1266, 1269 (10th Cir.2003) (quoting *AT & T Techs.,* 475 U.S. at 648, 106 S.Ct. 1415) (internal quotation marks omitted). Non-signatories can compel arbitration only if state contract law permits them to enforce the arbitration agreement. *Arthur Andersen*, 556 U.S. at 631.

"To determine whether the contracting parties intended to directly benefit a third party and entered into the contract for that purpose, courts must look solely to the contract's language, construed as a whole." *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017).

Here, there is nothing in the arbitration provision indicating that the parties intended that Defendant would be a beneficiary of the arbitration provision or have the right to enforce it. Defendant emphasizes the portion of the dispute resolution provision which states that Plaintiff agrees "that every dispute arising in connection with these Terms will be resolved by binding arbitration." **Doc. 8 at 6.**  However, Defendant ignores the preceding part of the arbitration provision which expressly states "[i]n the interest of resolving disputes between *you and RigUp* in the most expedient and cost effective manner, *you and RigUp* agree that every dispute arising in connection with these Terms will be resolved by binding arbitration." **Doc. 9-1, Ex. B § 24** (emphasis added). Elsewhere, the Agreement provides that "*Any interactions or disputes between you and a Company are solely between you and that Company.* RigUp and its licensors shall have

no liability, obligation or responsibility for any interaction between you and any Company." ***Id.***, **Ex. A § 5** (emphasis added). Moreover, the Terms of Service provision regarding third party disputes appears to be an express statement that third parties would not be subject to the arbitration clause:

**17. Third Party Disputes.** RIGUP IS NOT AFFILIATED WITH ANY SERVICE PROVIDER, OPERATOR, VENDOR, OR THIRD PARTY SERVICE, AND ANY DISPUTE YOU HAVE WITH ANY SERVICE PROVIDER, OPERATOR, VENDOR, THIRD PARTY SERVICE, OR OTHER THIRD PARTY, INCLUDING, WITHOUT LIMITATION, ANY OTHER USER OF THE SERVICE, IS DIRECTLY BETWEEN YOU AND THAT THIRD PARTY, AND YOU IRREVOCABLY RELEASE THE RELEASED PARTIES…

***Id.***, **Ex. B, § 17.**

Looking at the document as a whole, it is clear that RigUp had no issue referring to third parties where it wished. Thus, the Court finds that the omission in the arbitration provision was likely purposeful. *See First Bank v. Brumitt*, 519 S.W.3d at 103 ("[W]e must begin with the presumption that the parties contracted solely for themselves, and only a clear expression of the intent to create a third-party beneficiary can overcome that presumption. If the contract's language leaves any doubt about the parties' intent, those doubts must be resolved against conferring third-party beneficiary status. Although a contract may expressly provide that the parties do *not* intend to create a third-party beneficiary, the absence of such language is not determinative. Instead, the controlling factor is the absence of any sufficiently clear and unequivocal language demonstrating" the necessary intent.") (quotation marks and internal citations omitted) (emphasis in original).

This includes cases involving employment agreements where the drafter-staffing company did not include language granting its clients the right to arbitrate. *Bock v. Salt Creek Midstream LLC*, Civ. No. 19-1163 WJ/GJF, 2020 WL 3989646, at *11 (D. N.M. July 15, 2020) (denying staffing company's motion to compel plaintiff to arbitrate against its customers because "with just a very few keystrokes, [RigUp] could have added its *customers* to this list and accorded them the

same protection, yet [RigUp] for whatever reason chose not to do so," finding "this silence is thunderous given [RigUp's] business model."); *Flynn v. Sanchez Oil & Gas Corp*., SA-19-CV-00867-JKP, 2019 WL 6606530, at *5 (W.D. Tex. Dec. 5, 2019), *adopted* at 2020 WL 1082825 (W.D. Tex. Mar. 6, 2020) ("Cypress-TIR, the drafter of the Employment Agreement, could have explicitly required its employees to arbitrate any claims against its customers but it did not do so— neither in the arbitration provision nor in the provision of the Employment Agreement that specifically addresses employee claims against Cypress-TIR's customers.").

Defendant argues that the Agreement's reference to a third party "Company" or "companies" in other sections, such as in the indemnification provision, is demonstrative of Defendant as a direct third-party beneficiary. **Doc. 15 at 1.** The Court disagrees. Here, the Court finds it significant that although the Agreement references potential third party "Company" or "companies", it omits any reference to them in the arbitration provision. *Flynn.*, 2019 WL 6606530 at *4 ("The Court is not persuaded by Sanchez's argument that the Employment Agreement's references to 'customer' in another portion of the contract establishes the parties' intent to arbitrate employee claims against customers," finding "[s]uch language may demonstrate that Sanchez is an incidental beneficiary of the parties' contract but not that the parties intended to grant Sanchez the right to enforce Cypress-TIR's various agreements with its employees.); *see also Bock v. Salt Creek Midstream LLC*, No. CV 19-1163 WJ/GJF, 2020 WL 3989646, at *14 (D.N.M. July 15, 2020), *report and recommendation adopted,* No. CV 19-1163 WJ/GJF, 2020 WL 5640669 (D.N.M. Sept. 22, 2020) ("To say now that the language is malleable enough to apply to lawsuits against its customers – whom Kestrel kept off the list and out of that section – would permit Kestrel to smuggle an elephant through a keyhole, a result that Court believes is not warranted[.]").

Contrary to Defendant's implication, the fact that Plaintiff may have agreed to indemnify

"RigUp Parties and Company" is not dispositive of Plaintiff or RigUp's intent to grant a third party company the benefit of arbitration. *Salazar v. People's Choice Home Loan, Inc.*, No. 04-cv-0946 PJK/RLP, 2005 WL 8164260, at \*4 (D. N.M. Feb. 4, 2005) (rejecting the notion that a claim for indemnity by a non-signatory defendant against a signatory constituted a direct benefit sufficient to compel arbitration as a third-party beneficiary where the agreement did not clearly state the parties' intention to allow the non-signatory to benefit from the arbitration provision); *BC Tech., Inc. v. Ensil Intern. Corp.*, No. 2:02-CV-700 TS, 2007 WL 2908282, at \*4 (D. Utah Oct. 3, 2007) (the existence of an indemnity clause does not give rise to third party beneficiary status). The mere fact that third-party "companies" are referenced in other parts of the Agreement does not mean that Plaintiff intended to directly benefit clients in the arbitration provision. *See Gorsuch, Ltd. v. Wells Fargo Nat'l Bank. Ass'n*, 771 F.3d 1230, 1238 (10th Cir. 2014) (the fact an agreement contemplates or references another party does not suffice to render that party a third-party beneficiary). Therefore, reading these provisions together as a whole, the Court concludes that Plaintiff and RigUp did not intend to directly benefit Defendant and provide Defendant the right to enforce the arbitration agreement. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 421 (Tex. 2011) ("[T]he fact that a person is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement, does not make him a third-party beneficiary.") (internal quotation marks omitted). The Court finds that Defendant was clearly and unmistakably left out of the arbitration agreement in the contract.

This result is the same under New Mexico law. The Tenth Circuit has summarized the relevant New Mexico law as follows:

> Under New Mexico law, "[g]enerally, third parties who are not signatories to an arbitration agreement are not bound by the agreement and are not subject to, and cannot compel, arbitration." *Horanburg v. Felter,* 136 N.M. 435, 99 P.3d 685, 689 (N.M.Ct.App.2004). However, Defendant may be able enforce the arbitration

16

agreement as a third-party beneficiary *See, e.g., Fleet Mortg. Corp. v. Schuster,* 112 N.M. 48, 811 P.2d 81, 82 (1991).

"Whether a party is a third-party beneficiary depends on if the parties to the contract intended to benefit the third party." *Id.* at 82–83. "The burden is on the person claiming to be a third-party beneficiary to show that the parties to the contract intended to benefit him." *Tarin's, Inc. v. Tinley,* 129 N.M. 185, 3 P.3d 680, 686 (N.M.Ct.App.1999). "Such intent must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary." *Fleet Mortg.,* 811 P.2d at 83 (internal quotation marks omitted).

*Fundamental Admin. Servs., LLC v. Patton*, 504 F. App'x 694, 698 (10th Cir. 2012) (unpublished). For the same reasons stated previously, there is no indication that Plaintiff and RigUp intended to grant third parties the right to enforce the arbitration agreement.

### III.   <u>The Court will not estop Plaintiff from objecting to arbitration.</u>

The Court applies state-law principles in determining whether a non-signatory may compel arbitration, including state law on equitable estoppel. *Arthur Andersen*, 556 U.S. at 631. Defendant argues that under New Mexico law, "two circumstances allow a non-signatory to compel arbitration against a signatory: (1) when a signatory to the agreement must rely on the terms of the agreements in making a claim against a non-signatory; or (2) when a signatory alleges substantial interdependence and concerted misconduct by both another signatory and a non-signatory, making arbitration between signatories meaningless." **Doc. 8 at 7-8.** Defendant focuses on the second prong of substantial interdependence and concerted misconduct.

### A.   Analysis

Under the facts presented here, this avenue is clearly foreclosed under Texas law. In *Hiser v. NZone Guidance, L.L.C.,* 799 Fed. Appx. 247 (5th Cir. 2020) the Fifth Circuit addressed a nearly identical action involving RigUp and a third-party defendant seeking to compel arbitration against the plaintiffs. The Fifth Circuit squarely addressed the relevant issues here:

In the arbitration context, the Texas Supreme Court has distinguished between two different kinds of equitable estoppel: concerted misconduct estoppel and intertwined claims estoppel. *See In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 193–94 (Tex. 2007). And it "disallow[ed] the former while noting the relevancy and value of the latter." *Hays*, 838 F.3d at 611 n.5; *see also Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 814 F.3d 300, 305 (5th Cir. 2016) (recognizing that "[t]he concerted misconduct estoppel theory is foreclosed" under Texas law). NZone's petition to enforce arbitration was unclear on which estoppel theory it purported to invoke. But it relied heavily on *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000), a case that involved concerted misconduct estoppel, *see Hays*, 838 F.3d at 610–11 n.4. Since the Texas Supreme Court has rejected that theory, the district court correctly refused to apply it here. NZone cannot avoid that result by arguing for the first time on appeal that it really meant to invoke *Grigson* for intertwined claims estoppel. *See, e.g.*, *Coury v. Moss*, 529 F.3d 579, 587 (5th Cir. 2008).

Third, NZone argues the district court should have relied on the doctrine of direct benefits estoppel to compel arbitration. "This estoppel theory precludes a plaintiff from seeking to hold the non-signatory liable based on the terms of an agreement that contains an arbitration provision while simultaneously asserting the provision lacks force because the defendant is a non-signatory." *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 637 (Tex. 2018). But in Texas, "when the substance of the claim arises from general obligations imposed by state law ... or federal law, direct-benefits estoppel is not implicated even if the claim refers to or relates to the contract or would not have arisen but for the contract's existence." *Id.* (internal quotation marks and citation omitted). The plaintiffs here are individual workers who signed agreements with RigUp and performed services for NZone. Their claims against NZone arise under the federal Fair Labor Standards Act. So any "liability arises from general obligations imposed by [that] law." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005). Because the plaintiffs' overtime claims are based on a right conferred by federal law, the plaintiffs do not seek a benefit from their agreements with RigUp, and NZone could not compel arbitration under direct benefits estoppel.

*Hiser v. NZone Guidance, L.L.C.*, 799 Fed. Appx. 247, 248 (5th Cir. 2020).

Here, Defendant has not provided an argument that would convince the Court that the result should differ in this instance. Plaintiff need not rely on the terms of the Agreement to make his FLSA claim. Plaintiff persuasively argues that he can establish his FLSA claim independent of the Agreement. *See* **Doc. 11 at 23.** In determining whether an individual is an independent contractor or an employee for FLSA purposes, the "inquiry is not limited by any contractual

terminology or by traditional common law concepts of 'employee' or 'independent contractor.' "
*Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) (considering and
rejecting employer's characterization of rig welders as independent contractors despite parties
signing "Agreement with Independent contractor."); *Dole v. Snell*, 845 F.2d 802, 804 (10th Cir.
1989) ("Courts are not limited by any contractual terminology used by the parties or by the
traditional common law concepts of 'employee' or 'independent contractor.'"). "It is well settled
that the economic realities of an individual's working relationship with the employer—not
necessarily the label or structure overlaying the relationship—determine whether the individual is
an employee under the FLSA. In determining whether an individual is an employee under the
FLSA, the inquiry is not limited to the contractual terminology between the parties or the way they
choose to describe the working relationship." *Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d
1156, 1159–60 (10th Cir. 2018) (internal citations omitted).

Although the Agreement may be referenced in this case by Defendant as evidence under
the economic realities test, Plaintiff does not rely on that contract in asserting his FLSA claims.
*See Flynn*, 2019 WL 6606530, at *6 (finding FLSA claims are "statutory and arise under the FLSA,
a federal law, and not the contract" and the determination of whether a plaintiff "is ultimately
entitled to overtime compensation as an employee under the FLSA does not depend on the terms
of [the plaintiff's] employment agreement. Rather it turns on the economic realities of [plaintiff's]
relationship with [the defendant]…[b]ut ultimately, no matter what was promised or documented
[in the agreement], what will be dispositive under the FLSA will be how the parties in reality
behaved."); *Newman v. Plains All Am. Pipeline, L.P.*, No. 7:19-cv-00244-DC-RCG, Doc. 28, at
*7-8 (W.D. Tex. May 12, 2020) (finding an FLSA "Plaintiff's claims are statutory and arise under
the FLSA, a federal law, and not the Employment Agreement," thus "while Plaintiff's FLSA

claims against Defendant relate to the contract with Cypress, they do not depend on the contract's existence."). Accordingly, the Court concludes that neither theory of estoppel supports Defendant's position under Texas law.[9]

The results are no better for Defendant under New Mexico law. In New Mexico, "[g]enerally, a non-signatory to an arbitration agreement cannot compel arbitration." *Mulqueen v. Radiology Assocs. of Albuquerque, P.A.,* 2019 WL 1231408, at *6 (N.M. Ct. App. Feb. 4, 2019) (citing *Horanburg v. Felter*, 2004-NMCA-121, ¶ 16, 136 N.M. 435, 99 P.3d 685). Defendant is correct that the doctrine of equitable estoppel provides for two circumstances that allow enforcement by a non-signatory: "(1) when a signatory to the agreement must rely on the terms of the agreement in making a claim against a non-signatory; or (2) when a signatory alleges substantial interdependence and concerted misconduct by both another signatory and a non-signatory, making arbitration between signatories meaningless." *Id*. (citing *Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 527–28 (5th Cir.2000)); *see also La Frontera Ctr., Inc. v. United Behavioral Health, Inc.,* 268 F. Supp. 3d 1167, 1218 (D.N.M. 2017) ("The Court concludes that the Supreme Court of New Mexico would recognize that a nonsignatory to an arbitration agreement may successfully rely on the doctrine of equitable estoppel to compel arbitration."). For the reasons stated previously, the first instance is inapplicable here. Plaintiff's claims arise out of the FLSA. *See e.g. Lenox Maclaren Surgical Corp. v. Medtronic, Inc*., 449 Fed. Appx. 704 (10th

---

[9] The Court also notes that even if it were to apply the "intertwined claims" theory of estoppel, the validity of which has not been determined under Texas law, the Supreme Court of Texas has noted that to enforce an arbitration clause by a non-signatory would require the relationship between a signatory and non-signatory to be more than just independent entities in a business transaction, such as a corporate relationship. *Jody James*, 547 S.W.3d at 640 ("The [parties] may have an entangled business relationship with respect to the crop-insurance transaction, but no evidence, nor even allegations, show them to be anything other than independent and distinct entities…To compel arbitration based on this [intertwined claims] theory, the relationship must be closer than merely independent participants in a business transaction.").

Cir. 2011) (unpublished) ("For a plaintiff's claims to rely on the contract containing the arbitration provision, the contract must form the legal basis of those claims; it is not enough that the contract is factually significant to the plaintiff's claims or has a "but-for" relationship with them. The claims must be so intertwined with the agreement that it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow availability of the arbitration clause of that same agreement."). Thus, Defendant's position turns on the issue of estoppel based on allegations of substantial interdependence and concerted misconduct.

Citing allegations in the Complaint where Plaintiff claimed that Defendant and dismissed Defendants RigUp and RUSCO operated effectively as joint employers, Defendant argues that Plaintiff has alleged substantial interdependence and concerted misconduct between RigUp and Defendant such that arbitration should be enforced. **Doc. 8 at 8-9.** *See, e.g., Bock v. Salt Creek Midstream LLC*, No. CV 19-1163 WJ/GJF, 2020 WL 3989646, at \*19; *Mulqueen v. Radiology Assocs. of Albuquerque, P.A.*, No. A-1-CA-35852, 2019 WL 1231408, at \*6 (N.M. Ct. App. Feb. 4, 2019).

While the Court acknowledges the strong public policy favoring arbitration in New Mexico, it cannot conclude that the instant action warrants enforcement of an arbitration provision lacking clear intent to include non-signatory third parties. The Court notes that in several cases in New Mexico in which the courts applied this estoppel theory, there was a stronger relationship than present here, such as a parent-subsidiary relationship, between a party and the non-signatory third party seeking to enforce arbitration. There is no such connection here, where it is undisputed that RigUp/RUSCO and Defendant are independent entities. *See e.g. Thompson v. THI of New Mexico at Casa Arena*, 2008 WL 5999653, at \*15 (D.N.M. Dec. 24, 2008) (discussing the theory of equitable estoppel regarding arbitration, finding that "In most cases, however, courts held that

the parties were estopped from avoiding arbitration because they had entered into written arbitration agreements, albeit with the affiliates of those parties asserting the arbitration and not the parties themselves." (internal quotation marks and citation omitted); *La Frontera Ctr., Inc.*, F. Supp. 3d at 1219 (estopping the plaintiff from avoiding arbitration "*In light of the corporate relationship between the United Health entities* and the intertwined nature of La Frontera's claims against each, the Court prevents La Frontera from avoiding arbitration with United Healthcare Insurance [a non-signatory] and Optumhealth [a subsidiary/joint venture of United Healthcare Insurance]." (emphasis added); *Mulqueen v. Radiology Associates of Albuquerque, P.A.*, 2019 WL 1231408 (enforcing arbitration clause against the plaintiff, finding that she had asserted intertwined claims against Radiology Associates of Albuquerque, P.A. and its, non-signatory individual shareholders).

Therefore, under the factual circumstances of this case, the Court declines to equitably estop Plaintiff under either Texas or New Mexico law.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss **(Doc. 8)** is **DENIED.**

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**

22
