IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES OLDHAM,
individually and on behalf of
all others similarly situated,

    Plaintiff,

v.                                                   Civ. No. 2:20-cv-01166 MIS/GBW

NOVA MUD, INC.,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO COMPEL ARBITRATION**

THIS MATTER comes before the Court on the Motion to Compel Arbitration ("Motion") filed by Third Party Defendant RUSCO Operating, LLC ("RUSCO"). ECF No. 27. The Plaintiff, James Oldham, filed a response, and RUSCO filed a reply. ECF Nos. 44, 45. Having considered the parties' submissions, the record, and the relevant law, the Motion is **DENIED**.

## BACKGROUND

Plaintiff filed this action on November 9, 2020, on behalf of himself and all others similarly situated, asserting claims against Defendants Nova Mud, RUSCO, and RigUp, Inc. ("RigUp") for failure to pay overtime in violation of the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA"). ECF No. 1. RUSCO and RigUp run a workplace bidding platform in the oil and gas industry, and Nova Mud is an oil and gas operator. *See id.*

RUSCO explains that their business model of providing customers with independent contractors allows oil and gas operators to adjust their workforce seasonally

based on demand as "[t]he industry is characterized by its boom-bust cycles." ECF No. 27 at 4. Nova Mud is one such customer of RUSCO. ECF No. 27 at 1. RUSCO explains that it benefits from broad arbitration clauses in its independent contractor agreements due to the private and relatively affordable nature of arbitration as compared to litigation. ECF No. 27 at 5. Plaintiff alleges instead that RigUp and RUSCO, its wholly owned subsidiary, "perform certain human resources tasks, such as running background checks and payroll functions" for third-party companies like Nova Mud as an "intentional ruse" to evade accountability under FLSA by improperly classifying workers as independent contractors. ECF No. 11 at 9–10.

Plaintiff, prior to performing work for Nova Mud in both New Mexico and Texas, executed an independent contractor agreement with RigUp. ECF No. 18 at 1–2. The operative agreement provides that "[a]ny interactions or disputes between you and a Company are solely between you and that Company." ECF No. 9-1 at 5. The agreement also indicates that its terms are subject to "Section 24" of RigUp's Terms of Service, which provides for arbitration. *Id.* at 7; ECF No. 18 at 3–4. The Terms of Service also indicates as follows:

> RIGUP IS NOT AFFILIATED WITH ANY SERVICE PROVIDER, OPERATOR, VENDOR, OR THIRD PARTY SERVICE, AND ANY DISPUTE YOU HAVE WITH ANY SERVICE PROVIDER, OPERATOR, VENDOR, THIRD PARTY SERVICE, OR OTHER THIRD PARTY, INCLUDING, WITHOUT LIMITATION, ANY OTHER USER OF THE SERVICE, IS DIRECTLY BETWEEN YOU AND THAT THIRD PARTY . . .

ECF No. 18 at 4.

On January 8, 2021, Plaintiff voluntarily dismissed his claims against RUSCO and RigUp, leaving Nova Mud as the only remaining Defendant. ECF No. 7. Nova Mud then

filed a Motion to Dismiss and/or Compel Arbitration, ECF No. 8, which the Court denied, ECF No. 18. In its order, the Court found that non-signatory Nova Mud, as a third-party contract beneficiary, could not equitably estop Plaintiff from avoiding arbitration of his claims under either Texas or New Mexico Law, as Plaintiff's claims do not arise from the contract that contains the arbitration provision but instead from statute, and that the other relevant estoppel doctrines do not apply. ECF No.18 at 20–22.

Nova Mud filed its Answer and Original Third-Party Complaint on September 21, 2021, asserting claims for declaratory judgment and breach of contract against RUSCO. ECF No. 19. Plaintiff filed a motion to strike or sever Nova Mud's Third-Party Complaint, which the Court denied. ECF Nos. 20, 38.

RUSCO filed the instant Motion to Compel Arbitration on December 7, 2021, asking the Court to compel arbitration of the threshold question of arbitrability of Plaintiff's claims. ECF No. 27 at 8. In the alternative, RUSCO argues the Court should compel arbitration of Plaintiff's claims as Plaintiff has consented to arbitration, and also under the theory of intertwined claims. *Id.* RUSCO further contends that Plaintiff's class action claims should be dismissed as the same agreement contains a class action waiver. *Id.* at 19.

## LEGAL STANDARD

### I. Choice of Law

Courts look to state law to determine the applicability of an arbitration provision. *See*, *e.g.*, *Arthur Andersen*, 556 U.S. at 624; *Wood v. PennTex Res.*, L.P., 458 F. Supp. 2d 355, 361 (S.D. Tex. 2006), *aff'd sub nom. Wood v. Penntex Res. LP.*, 322 F. App'x 410 (5th Cir. 2009) ("[S]tate law governs whether a litigant agreed to arbitrate."). When

3

faced with a federal question, such as a claim arising under FLSA, a court must apply federal choice-of-law principles. *Ellis v. Liberty Life Assurance Co. of Boston*, 958 F.3d 1271, 1283 (10th Cir. 2020), *cert. denied*, *Ellis v. Liberty Life Assurance Co. of Boston*, 141 S. Ct. 2567 (2021). "[C]ourts have relied upon the Restatement (Second) of Conflicts of the Law for the content of federal common law." *Grand Isle Shipyard, Inc. v. Seacor Marine*, LLC, 589 F.3d 778, 809 n.39 (5th Cir. 2009) (Owen, J., dissenting) (collecting cases). The Restatement (Second) of Conflicts applies the "most significant contacts" test when the agreement does not contain a choice of law provision. Restatement (Second) of Conflict of Laws § 188 (1971); *see also Bock v. Salt Creek Midstream LLC*, No. 19-cv-1163, 2020 WL 3989646, at *17 (D.N.M. July 15, 2020), *report and recommendation adopted*, 2020 WL 5640669 (D.N.M. Sept. 22, 2020).

## II.     The Federal Arbitration Act

When a party refuses to arbitrate claims covered by a valid arbitration agreement, the Federal Arbitration Act ("FAA") permits a party to move to compel arbitration. 9 U.S.C. § 4. However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)). "Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties *agreed* to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (emphasis added). "[T]o determine whether a party has agreed to arbitrate a dispute," the Court applies "ordinary state-law principles that govern the formation of contracts . . . ." *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir.

2013). Generally, mutual assent is essential to a contract. *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017). Arbitration including a non-signatory may, however, be required under the following theories: (1) incorporation by reference; (2) assumption, (3) agency, (4) veil-piercing/alter ego, (5) estoppel, and (6) third-party beneficiary. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005).

Although the presence of an arbitration clause generally creates a presumption in favor of arbitration, *see ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995), "this presumption disappears when the parties dispute the existence of a valid arbitration agreement," *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002). A motion to compel arbitration is treated similarly to a motion for summary judgment, in that "the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement." *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014).

### III.   The Federal Labor Standards Act

Pursuant to FLSA, determining a plaintiff's status as either an independent contractor or an employee is not guided by any contract the worker may have signed. *See Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 570 (10th Cir. 1994) (citing *Dole v. Snell*, 875 F.2d 802, 804 (10th Cir. 1989)) ("[O]ur inquiry is not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.'"). Instead, the inquiry delves into the economic reality of the

5

relationship, including (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business. *Henderson*, 41 F.3d at 570. A worker cannot waive her rights under FLSA. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013) ("The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract."); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981).

## DISCUSSION

In the earlier motion to compel arbitration, Nova Mud—a non-signatory to the agreement—argued that it could enforce the arbitration provision against Plaintiff as an intended third-party beneficiary of the contract between Plaintiff and RigUp. *See generally* ECF No. 8. The Court denied this motion as, among other things, it found no indication that Plaintiff and RigUp *intended* to give Nova Mud—or indeed, any third party—the benefit of the arbitration agreement. ECF No. 18 at 13. The question now before the Court is whether a staffing agency whose wholly-owned subsidiary *is* a signatory of the arbitration agreement can enforce arbitration of Plaintiff's claims against its customer—even when Plaintiff no longer maintains claims against the staffing agency itself.

In its Motion, RUSCO argues that the arbitrability of Plaintiff's claims is for an arbitrator to decide. ECF No. 27 at 8. In the alternative, it contends that Plaintiff's claims are subject to arbitration for two reasons. *Id.* First, RUSCO alleges that Plaintiff's claims against Nova Mud "fall squarely within the parameters of the arbitration provision" of his

6

agreement with RigUp, and that he thus consented to arbitration of his remaining claims. *Id.* Second, RUSCO argues that "Plaintiff's and Nova Mud's claims in this action are inextricably intertwined" and that Plaintiff should therefore be estopped from avoiding arbitration. *Id.*

Plaintiff, meanwhile, argues that his agreement to arbitrate claims against RUSCO's subsidiary did not encompass consenting to arbitrate his remaining claims against Nova Mud. ECF No. 44 at 5–6. He further maintains that his claims against Nova Mud are not "inextricably intertwined" with its own indemnification claims against RUSCO, because Nova Mud and RUSCO did not have the requisite "close relationship" as required by Texas law. *Id.* at 7.

## I. Preliminary Matters

First, as to RUSCO's argument that Plaintiff consented to the relief sought in the Motion under Local Rule 7.1(b) by failing to timely submit his opposition, Plaintiff has since submitted substantive opposition. ECF No. 45 at 2 n.1; D.N.M.LR-Civ. 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion"). The Court, therefore, declines to find the Motion unopposed. *See Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970) ("The preferred disposition of any case is upon its merits . . . .").

Second, as to choice of law, RUSCO's Motion is the second motion to compel arbitration filed in this case. ECF Nos. 8, 27. The Court, in resolving the earlier motion, already considered Nova Mud's arguments regarding choice of law at length, finding that "on balance, there are more substantial Texas contacts at play given the allegation that a substantial portion of the work was performed in Texas and considering the citizenship

of the various parties under Restatement (Second) § 188 and § 6." ECF No. 18 at 11. Additionally, the parties now appear to agree that Texas law applies. *See* ECF Nos. 27; 44. The Court will therefore analyze the arbitrability of the Plaintiff's claims under Texas state law.

Next, RUSCO argues that the threshold question of arbitrability falls to the arbitrator due to the delegation clause in the operative agreement, although the Court has already addressed the issue of arbitrability of Plaintiff's claims from the perspective of third-party beneficiary estoppel without objection as to its right to do so. *See* ECF Nos. 27 at 8; 18; 8 at 2.

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs.,* 475 U.S. at 649. Here, Plaintiff challenges the applicability of the delegation clause in its agreement with RUSCO's subsidiary to its claims against non-signatory Nova Mud. ECF No. 44 at 5–6. The Court agrees with Plaintiff that the delegation clause in the arbitration agreement "cannot mean any controversy or dispute Plaintiff ever has with any party without consideration to contractual privity . . . ." ECF No. 44 at 6. The Court, therefore, cannot say that the parties have unequivocally agreed to arbitrate the question of arbitrability of Plaintiff's remaining claims. The question of whether the relevant parties agreed to arbitrate thus falls to the Court.

## II. Whether Plaintiff Consented to Arbitrate His Remaining Claims

RUSCO alleges that Plaintiff's claims against Nova Mud "fall within the broad scope of the arbitration provision" because they "aris[e] out of or relat[e] to any aspect" of the parties' relationship. ECF No. 27 at 9–10. RUSCO similarly argues that the "ultimate

8

issue in this case . . . requires an in-depth analysis [of] Plaintiff['s] agreements with RigUp and RUSCO." *Id.* at 17.

This is not so. The Court has already found that "Plaintiff's claims under the FLSA are independent of the purported agreement with RigUp, and Plaintiff is not relying upon the contract in any way. Indeed, it is Plaintiff's position that the contract is illegal as it purports to waive his rights under the FLSA." ECF No. 11 at 30; *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013) ("The FLSA establishes . . . guarantees that cannot be modified by contract.").

Additionally, the plain text of the Terms of Service applicable to the arbitration agreement expressly excludes all third-party entanglement. ECF No. 18 at 4 ("ANY DISPUTE YOU HAVE WITH ANY SERVICE PROVIDER, OPERATOR, VENDOR, THIRD PARTY SERVICE, OR OTHER THIRD PARTY, INCLUDING, WITHOUT LIMITATION, ANY OTHER USER OF THE SERVICE, IS DIRECTLY BETWEEN YOU AND THAT THIRD PARTY . . ."). Thus, as previously stated by the Court, "it is clear that RigUp had no issue referring to third parties where it wished. Thus, the Court finds that the omission in the arbitration provision was likely purposeful." ECF No. 18 at 14. The Court, therefore, finds that Plaintiff did not consent to arbitrate his claims against Nova Mud, and will proceed to analyze the arbitrability of Plaintiff's claims under the theory of intertwined claims estoppel.

### III.   Whether Plaintiff is Estopped from Avoiding Arbitration

The Texas Supreme Court has rejected "concerted misconduct" estoppel and has said that alternative estoppel from avoiding arbitration requires "not only a dispute intertwined with the contract but also a relationship between the parties that developed in

9

a manner that makes it unfair *not* to compel arbitration." *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 639 (Tex. 2018) (internal quotation marks omitted) (emphasis in original). "Any arbitration doctrine forcing an unwilling party into arbitration must thus have some basis in fairness and consent." *Id.* at 640. "Concerns for consent and fairness mandate a particularly close relationship to invoke alternative estoppel. . . . To compel arbitration based on this [intertwined claims] theory, the relationship must be closer than merely independent participants in a business transaction." *Id.*; *see also Randle v. Metro. Transit Auth. of Harris Cnty.,* No. H-18-1770, 2018 WL 4701567, at *8–9 (S.D. Tex. Oct. 1, 2018) ("Under Texas law, a subcontractor relationship is insufficient.").

As discussed above, Plaintiff's instant dispute with Nova Mud does not depend on its contract with RUSCO's subsidiary. However, even assuming *arguendo* that it did, the doctrine of intertwined claims estoppel does not apply, as the Court finds that RUSCO and Nova Mud lack the requisite relationship. RUSCO contends that Plaintiff's dismissal of RUSCO and RigUp consists of "artful pleading" that seeks to avoid arbitration and that Plaintiff is "estopped from avoiding arbitration by strategically omitting RUSCO." ECF No. 27 at 11.

As explained by the Fifth Circuit in *Newman v. Plains All Am. Pipeline, L.P.*, however, artful pleading estoppel in Texas normally entails (1) naming individual agents of the party to the arbitration clause and suing them instead in their individual capacity, while (2) bringing a suit that is, in substance, against those agents' principal. 23 F.4th 393, 407 (5th Cir. 2022); *see also In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 189 (Tex. 2007). Here, RUSCO and Nova Mud are separate corporations, and RUSCO does

not allege that there is a qualifying agency relationship between the two. *See* ECF No. 27. This argument is, therefore, unavailing.

Further, here, as in *Newman,* the indemnity relationship between RUSCO and Nova Mud does not create an adequately "close relationship" under Texas law:

> Would a reasonable signatory to the arbitration agreement anticipate being forced to arbitrate claims against the nonsignatory? The answer here is no. . . . A reasonable signatory to an arbitration agreement would not foresee that a corporate subsidiary . . . can unilaterally change his arbitration rights merely by agreeing to indemnify a client.

23 F.4th at 407; *see also* ECF No. 18 at 20 n.9. RUSCO cites *Merrill Lynch* for the proposition that "a 'surety' relationship can suffice" for purposes of compelling arbitration under the theory of intertwined claims. ECF No. 27 at 16; *see also* 235 S.W.3d at 189. In *Merrill Lynch*, however, the Texas Supreme Court noted that "the 'close relationship' requirement has generally limited this exception to instances of strategic pleading by a signatory who, in lieu of suing the other party for breach, instead sues that party's nonsignatory principals or agents for pulling the strings." 235 S.W.3d at 194. The *Merrill Lynch* court also mentioned with disapproval the possibility of "sweep[ing] independent entities . . . into arbitration agreements." *Id.* That case is therefore unsupportive of RUSCO's Motion.

RUSCO also refers to a Second Circuit case cited by the *Merrill Lynch* court, *Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403 (2d Cir. 2001), in which the court allowed a non-signatory surety to invoke a debtor's arbitration clause. *Choctaw* is distinguishable from the instant case in several respects, however, as the controversy in that case related to performance under a construction contract, as opposed to statutory relief. *Choctaw*, 271 F.3d at 403. The logic of that case does not apply here

11

as Plaintiff is seeking to enforce statutory rights as opposed to those arising from the breach of a contract.

As to *Cooper Industries*, which RUSCO indicates "cit[es] *Choctaw* with approval," the main text of the opinion states only that certain "[o]ther courts agree that a guarantor or surety of a party's obligation under a contract containing an arbitration clause may invoke or be bound by that clause in a suit *regarding the obligation.*" *Cooper Indus., LLC v. Pepsi-Cola Metro. Bottling Co., Inc.*, 475 S.W.3d 436, 444 (Tex. App. 2015) (emphasis added). As discussed above, Plaintiff's claims do not arise from a contract. This case is, therefore, inapplicable.

RUSCO also cites a case from this District, *Bock v. Salt Creek Midstream LLC*, to support its arguments. 2020 WL 3989646. However in that case, as here, the plaintiffs' only claims were against the non-signatory *customer* of the staffing company, not the signatory staffing company itself. 2020 WL 3989646, at *2. There the court applied New Mexico state law, not Texas law, and denied the staffing company's motion to compel arbitration, finding that the arbitration agreement with the staffing company did not put the workers on notice that disputes against its customers fell within the scope of the agreement. *Id.* at *11. It is therefore inapposite.

Finally, RUSCO cites *Trujillo v. Volt Management Corporation*, 846 F. App'x 233, 235 (5th Cir. 2021), saying the Fifth Circuit held that "the relationship between a staffing company like RUSCO and an operator like Nova Mud is close enough to support intertwined claims estoppel." ECF No. 27 at 13. This misstates the holding of the court. In *Volt*, the Fifth Circuit merely upheld the district court's application of equitable estoppel to compel arbitration, finding it was not an abuse of discretion as the district court had

12

found a "tight relatedness of the parties, contracts, and controversies." *Id.* at 237. As discussed below, the Court makes no such finding here. *Volt* also differs from the instant case as there, the plaintiff had claims still pending against the staffing company with which she had previously executed an arbitration agreement. 846 F. App'x at 235.

In *Volt*, the District Court found it persuasive that the plaintiff, who still maintained claims against the signatory staffing agency, had treated all defendants as a single entity in her complaint. *Trujillo v. Volt Mgmt. Corp.*, No. EP-19-CV-00337-DCG, 2020 WL 1906097, at *5 (W.D. Tex. Apr. 17, 2020), *aff'd*, 846 F. App'x 233 (5th Cir. 2021). RUSCO contends that here, Plaintiff similarly admits that RUSCO and Nova Mud have the requisite relationship to enforce intertwined claims estoppel as his original Complaint "recognizes the close relationship between RUSCO, RigUp, and Nova Mud and indeed treats them as an indistinguishable single unit in the Complaint." ECF No. 27 at 14.

However, Plaintiff has since dismissed his claims against RUSCO and RigUp. ECF No. 7. To the extent that RUSCO argues Plaintiff treats RUSCO, RigUp, and Nova Mud as the same entity in his Complaint, the Court finds that Plaintiff's treatment of all three original defendants as a single unit likely represents the Plaintiff's handling of the unique statutory meaning of the term "employer" under FLSA, which may include entities that did not initially hold themselves out as an employer, rather than any particular allegation regarding the relationship between the businesses themselves. The statutory standard for an "employer" under FLSA does not map that of a "close relationship" for purposes of compelling arbitration under the theory of intertwined claims. *Compare Henderson*, 41 F.3d at 570 *with Merrill Lynch*, 235 S.W.3d at 194 (construing Second Circuit jurisprudence); *see also Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156, 1159–60

13

(10th Cir. 2018) ("[T]he economic realities of an individual's working relationship with the employer—not necessarily the label or structure overlaying the relationship—determine whether the individual is an employee under the FLSA."). Additionally, RUSCO does not even allege that RUSCO and RigUp are subsidiaries or corporate agents of Nova Mud; here, as in *Jody James*, "no evidence, nor even allegations, show [the parties] to be anything other than independent and distinct entities." 547 S.W.3d at 640.

The instant case is therefore more similar to *Newman*, in which the plaintiff only sued the staffing company's customer. 23 F.4th at 393. There, the District Court found that the indemnity agreement between the staffing company and its customer did not create a close relationship between them, and declined to compel arbitration. *Id.* at 404, 408; *see also Newman v. Plains All Am. Pipeline, L.*P., No. MO:19-CV-0244-DC-RCG, 2020 WL 8678542, at *4 (W.D. Tex. Dec. 28, 2020), *report and recommendation adopted*, No. MO:19-CV-244-DC, 2021 WL 1245896 (W.D. Tex. Mar. 8, 2021), *aff'd*, 23 F.4th 393 (5th Cir. 2022) ("Sufficiently close relationships are primarily based on formal corporate affiliations."). The Court finds that here, as in *Newman*, the movant has failed to show an adequately close relationship. Additionally, application of intertwined claims estoppel would be especially disfavored under Texas law in the instant case, where the agreement Plaintiff executed included a clause explicitly disclaiming any involvement with any third party litigation. ECF No. 18 at 4 ("ANY DISPUTE YOU HAVE WITH ANY . . . THIRD PARTY, INCLUDING, WITHOUT LIMITATION, ANY OTHER USER OF THE SERVICE, IS DIRECTLY BETWEEN YOU AND THAT THIRD PARTY . . ."); *see also Jody James*, 547 S.W.3d at 639 ("Any arbitration doctrine forcing an unwilling party into arbitration must thus have some basis in fairness and consent."); *c.f. Reeves v. Enter. Prod. Partners, LP*,

17 F.4th 1008, 1015 (10th Cir. 2021) (applying equitable estoppel under Oklahoma law in the absence of such a clause). For these reasons, the Court will not apply intertwined claims estoppel to Plaintiff's claims.

To the extent that RUSCO's Motion asks that Plaintiff's class action claims against Nova Mud be dismissed, for the same reasons discussed above, the Court finds Plaintiff's class action waiver is inapplicable to his claims against a non-signatory. *See* ECF Nos. 27 at 19; 7 at 1.

RUSCO argues in its Reply, for the first time, that because RUSCO updated its arbitration provision in 2019 to include "RigUp's customers," Plaintiff agreed to arbitrate disputes between himself and customers such as Nova Mud. ECF No. 45 at 3–4. The updated 2019 contract was not attached to its Motion as an exhibit. *See* ECF No. 27-1. RUSCO does not in its reply show good cause—or indeed, any explanation at all—for its failure to introduce this evidence earlier.[1] *See generally* ECF No. 45; *see also M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief . . . ."); *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (granting motion based on new evidence in reply is abuse of discretion). The Court will not consider this new argument or evidence as it was not raised in the Motion. *Id.*; *see also Bellman*, 563 F. App'x at 612 ("[T]he party moving to compel arbitration bears the initial burden of

---

[1] The failure to include this new argument and evidence in its original Motion is especially egregious given that it is the *second* motion to compel arbitration in this case, meaning that RUSCO had the opportunity to review the attendant briefing and the Court's earlier ruling prior to filing its Motion.

presenting evidence sufficient to demonstrate the existence of an enforceable agreement . . . .").

In a one-sentence argument, towards the end of its Motion, RUSCO also argues that because Texas principles of contract law govern the applicability of its arbitration agreement with Plaintiff to Plaintiff's claims against Nova Mud, Plaintiff's claim against Defendant Nova Mud under a New Mexico state statute is barred. ECF No. 27 at 20. The Court declines to entertain this creative argument, as it is not fully briefed. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived.").

## CONCLUSION

For the foregoing reasons, Third Party Defendant RUSCO Operating, LLC's Motion to Compel Arbitration, ECF No. 27, is hereby **DENIED**.

**IT IS SO ORDERED.**

*/s/ Margaret Strickland*
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE