IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES OLDHAM,
individually and on behalf of
all others similarly situated,

    Plaintiff,

v.   No. 2:20-cv-01166-MIS-GBW

NOVA MUD, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING
## NOVA MUD'S SECOND MOTION TO COMPEL ARBITRATION

THIS MATTER comes before the Court on Defendant Nova Mud, Inc's Second Motion to Compel Arbitration ("Motion"). ECF No. 54. Plaintiff James Oldham filed a response, and Defendant Nova Mud, Inc., filed a reply. ECF Nos. 59, 65. Having considered the parties' submissions, the record, and the relevant law,[1] the Motion is **GRANTED**.

### BACKGROUND

Plaintiff filed this action on November 9, 2020, on behalf of himself and all others similarly situated, asserting claims against Defendants Nova Mud, RUSCO, and RigUp, Inc. ("RigUp") for failure to pay overtime in violation of the Fair Labor Standards Act, and the New Mexico Minimum Wage Act. ECF No. 1. RigUp and RUSCO, its wholly owned subsidiary, run a workplace bidding platform ("RUSCO's website") that connects their customers to workers in the oil and gas industry, and Nova Mud is the oil and gas operator for whom Plaintiff physically performed services on a day-to-day basis. *See generally id.*

---

[1] The Court determines that this matter is suitable for disposition without oral argument, contrary to Plaintiff's request. *See* ECF No. 59 at 1; D.N.M.LR-Civ. 7.6(a).

RUSCO's business model of providing customers—such as movant Nova Mud—with independent contractors allows oil and gas operators to adjust their workforce seasonally based on demand as "[t]he industry is characterized by its boom-bust cycles." ECF No. 27 at 4. Prior to performing work for Nova Mud in New Mexico and Texas, Plaintiff executed an independent contractor agreement with RigUp. ECF No. 18 at 1–2. The agreement indicates that its terms are subject to "Section 24" of RigUp's Terms of Service ("TOS"), which provides for arbitration of any disputes. ECF Nos. 9-1 at 7; 18 at 3–4. RUSCO generates revenue through its provision of payroll services. ECF No. 1 at 9; *see also* ECF No. 54 at 17–18. Plaintiff performed work for Nova Mud between February 2019 and December 2019, and regularly utilized RUSCO's website when filling out his timesheets. *Id.* at 3, 8.

On January 8, 2021, Plaintiff voluntarily dismissed his claims against RUSCO and RigUp. ECF No. 7. Nova Mud then filed a Motion to Dismiss and/or Compel Arbitration, ECF No. 8, which the Court denied, ECF No. 18. In its order, the Court found that non-signatory Nova Mud, as a third-party contract beneficiary, could not equitably estop Plaintiff from avoiding arbitration of his claims as Plaintiff's claims do not arise from a breach of the contract that contains the arbitration provision, but instead from alleged violations of a statute. ECF No. 18 at 20–22. The Court also found that the other relevant estoppel doctrines do not apply. *Id.* Under the 2016 TOS that Nova Mud presented to the Court at that time, RUSCO's customers were not included in the arbitration agreement. *See generally* ECF No. 9-1.

Nova Mud filed its Answer and Original Third-Party Complaint on September 21, 2021, asserting claims against RUSCO for indemnification and breach of contract. ECF No. 19. Plaintiff filed a motion to strike or sever Nova Mud's Third-Party Complaint, which the Court denied. ECF Nos. 20, 38.

RUSCO, now in the case as a third-party defendant, filed its own Motion to Compel Arbitration on December 7, 2021, asking the Court to compel arbitration of the threshold question of arbitrability of Plaintiff's claims. ECF No. 27 at 8. In the alternative, RUSCO argued the Court should compel arbitration of Plaintiff's claims as Plaintiff has consented to arbitration, and also under the theory of intertwined claims. *Id.* Then, for the first time in its reply, RUSCO argued that Plaintiff consented to arbitrate because it had actually updated its TOS in 2019 to include customers—such as Nova Mud—in the arbitration section. ECF No. 45 at 3. In particular, the 2019 TOS state that, "[i]n the interest of resolving disputes between you and RigUp, or you and RigUp's customers, in the most expedient and cost effective manner, you and RigUp agree that every dispute arising in connection with these Terms will be resolved by binding arbitration."[2] ECF No. 45 at 29; *see also* ECF No. 54 at 35.

The Court found that intertwined claims estoppel did not apply to the instant case, as there was not a sufficiently close relationship between the staffing company and its customer and because the cited agreement explicitly disclaimed involvement with third-party litigation. ECF No. 47 at 14. The Court declined to consider RUSCO's 2019 TOS as it was not raised in the motion itself. *Id.* at 15.

Nova Mud—who is adverse to third-party defendant RUSCO as a third-party plaintiff— now moves to compel arbitration for the second time, stating that it did not learn of RUSCO's amended TOS from 2019 until reading RUSCO's reply to its motion. ECF No. 54 at 1; *see also* ECF No. 45. Plaintiff contends that Nova Mud's Motion is, in truth, one for reconsideration, and that no reconsideration is warranted as the 2019 TOS has been freely available online since prior

---

[2] This section of the 2016 TOS, by contrast, had made no mention of RigUp's customers. *See* ECF No. 9-1 at 24.

to the inception of this case, and thus does not constitute "new evidence." ECF No. 59 at 3. Nova Mud, meanwhile, argues that it reasonably relied upon the sworn testimony of RUSCO's representative regarding the operative agreement—which RUSCO represented to be the 2016 TOS—when filing its first motion to compel arbitration. ECF No. 65 at 2. Nova Mud thus maintains that its Motion is not one for reconsideration, as it presents new facts. *Id.* at 5. In the alternative, Nova Mud contends its Motion is one for reconsideration only under Federal Rule of Civil Procedure ("Rule") 54(b), which governs interlocutory orders, and that it "would satisfy the lenient standards associated with that rule . . . ." *Id.* at 5.

## LEGAL STANDARD

### I. The Federal Arbitration Act

When a party refuses to arbitrate claims covered by a valid arbitration agreement, the Federal Arbitration Act ("FAA") permits a party to move to compel arbitration. 9 U.S.C. § 4. However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)). "Accordingly, the first task of a court asked to compel arbitration of a dispute is to determine whether the parties *agreed* to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (emphasis added). "[T]o determine whether a party has agreed to arbitrate a dispute," the Court applies "ordinary state-law principles that govern the formation of contracts . . . ." *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013). Generally, mutual assent is essential to a contract. *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017).

A motion to compel arbitration is treated similarly to a motion for summary judgment in that "the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement." *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014).

## II.     Reconsideration

The Rules do not specifically contemplate motions to reconsider, but a court may vacate a final ruling under Rule 59(e) due to (1) an intervening change in the controlling law, (2) new evidence previously unavailable, or (3) the need to correct clear error or prevent manifest injustice. *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995); *see BNSF Ry. Co. v. Lafarge Sw., Inc.*, 1:06-cv-1076 MCA/LFG, 2009 WL 10665755, at *3 (D.N.M. Feb. 21, 2009). However, orders "short of a final decree" may be reopened at the district judge's discretion. *Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983)). This is because "district courts generally remain free to reconsider their earlier interlocutory orders." *Been v. O.K. Indus.*, 495 F.3d 1217, 1225 (10th Cir. 2007). The Rules provide in relevant part that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). This power is not subject to any particular standard or framework. *See XTO Energy, Inc. v. ATD, LLC*, 189 F. Supp. 3d 1174, 1190 (D.N.M. 2016) (collecting cases).

## DISCUSSION

This is Nova Mud's second motion requesting the same relief. *See* ECF No. 8. Echoing RUSCO in its reply in support of its Motion to Compel Arbitration, ECF No. 45, Nova Mud now argues that RUSCO's 2019 TOS "expressly state[s] that the arbitration provision extends not just to disputes between [Plaintiff] and RUSCO, but also disputes between [Plaintiff] and RUSCO's 'customers,' like Nova [Mud]." ECF No. 54 at 1–2. Nova Mud further contends that this is a permissible successive motion to compel arbitration, not a motion for reconsideration, as it is based on separate factual grounds from the first motion. *Id.* at 4–5. In the alternative, Nova Mud alleges that it meets the lenient standard for reconsideration under Rule 54(b). *Id.* at 5–6.

Plaintiff, meanwhile, argues that Nova Mud's "failure to perform the most basic due diligence in obtaining what they now claim is the proper arbitration agreement" forecloses the requested relief under the relevant reconsideration standard. ECF No. 59 at 3. Plaintiff further contends that even if the Court considers the 2019 TOS, it never became effective as to either Plaintiff or the putative class due to lack of legally required notice. *Id.* at 11–15. The Court will address each of these arguments in turn.

### I. What Reconsideration Standard Applies

Nova Mud argues,

> Neither the FAA nor the Federal Rules prohibit the filing of a second motion to compel arbitration; courts commonly consider and grant them. And to the extent Nova must show good reason to have not raised the 2019 Terms in its First Motion, good reason exists because Nova did not, and had no reason to, know about the 2019 Terms until just recently.

ECF No. 54 at 2. Plaintiff, meanwhile, contends that the Court should not consider the instant motion as a permissible successive motion to compel arbitration, but instead as a motion for reconsideration, and that there are no grounds for the Court to reconsider. ECF No. 59 at 10.

6

In particular, Plaintiff alleges that the 2019 TOS was "publicly available on RigUp's website before this lawsuit was even filed" and that Nova's own failure to do "basic due diligence" constitutes a waiver of arbitration. ECF No. 59 at 2–3. Plaintiff has also included a copy of the 2019 TOS as captured by the Wayback Machine, a well-known internet archive, to show it has been publicly available since at least August 2019. ECF No. 59-1 at 4, 20–57.

Nova Mud claims, however, that it was not until RUSCO filed a reply in support of its own motion to compel arbitration that Nova Mud learned about the 2019 TOS. ECF No. 54 at 3. Nova Mud maintains that it reasonably relied upon the sworn testimony of RUSCO's representative regarding the operative agreement when filing its first motion to compel arbitration, ECF No. 65 at 7, citing RUSCO's earlier submission of the 2016 TOS to the Court, ECF No. 9-1. Nova Mud admits, however, that the Tenth Circuit has not directly addressed the permissibility of successive motions to compel arbitration. ECF No. 54 at 4.

Courts will indeed permit successive motions to compel under certain circumstances. *See*, *e.g.*, *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 715 (4th Cir. 2015) (finding that the district court was incorrect to construe motion as one for reconsideration as it was based on different grounds); *Weiss v. Am. Express Nat'l Bank*, No. 19-CV-4720 (JPO), 2020 WL 6807628, at *1 (S.D.N.Y. Nov. 18, 2020) (Plaintiff "points to no law or precedent establishing that successive motions to compel arbitration are improper . . . . The law-of-the-case doctrine is not pertinent here, where [Defendant] bases its motion on 'the availability of new evidence' . . . ."); *Schneider v. SRC Energy, Inc.*, 424 F. Supp. 3d 1094, 1099 (D. Colo. 2019) (allowing a renewed motion to compel arbitration in light of relevant newly decided state supreme court decision); *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 997, n.6 (N.D. Cal. 2012) (first motion to compel arbitration denied without prejudice due to evidentiary problems).

However, a court is not always bound to permit successive motions to compel arbitration—doing so would subject the Court to "a state of paralysis, subject to a never-ending loop of argument on the same underlying issues." *Meeks v. Experian Info. Sols., Inc.*, No. 21-CV-03266-VC, 2022 WL 53832, at *1 (N.D. Cal. Jan. 5, 2022), *rev'd on other grounds and remanded sub nom. Meeks v. Experian Info. Servs., Inc.*, No. 21-17023, 2022 WL 17958634 (9th Cir. Dec. 27, 2022). Indeed, "[i]t is an elementary principle of judicial economy that parties are expected to raise all relevant arguments in the briefing on a given motion; parties do not get a second bite at the apple if their initial arguments fail." *Id.*

The Court finds that the instant motion is indeed based on different grounds from Nova Mud's first motion to compel arbitration, which sought to enforce the arbitration provisions of the contract between Plaintiff and RUSCO as a third-party beneficiary despite no mention of customers in the agreement. ECF No. 8 at 12–13. Here, meanwhile, Nova Mud argues that Plaintiff explicitly consented to arbitrate disputes with RUSCO's customers. *See generally* ECF No. 54.

Nova Mud's argument that it reasonably relied on RUSCO's sworn testimony, however, cuts both ways. *See* ECF Nos. 65 at 7; 9-1. On the one hand, the two Defendants' being adverse to each other suggests a lack of collusion regarding the 2019 TOS, and indeed, Nova Mud would have benefited from raising the 2019 TOS earlier if it had been aware of it. *See* ECF No. 19; *see also* ECF No. 54 at 3 ("Obviously, had Nova [Mud] known, it would have relied on those [more favorable] amended terms."). On the other hand, Nova Mud's adverse relationship with RUSCO should have given it even *more* reason to diligently search public records and corroborate witness testimony with written documentation.

It was and remains Nova Mud's burden to produce evidence regarding arbitrability. *Bellman*, 563 F. App'x at 612 ("[T]he party moving to compel arbitration bears the initial burden

8

of presenting evidence sufficient to demonstrate the existence of an enforceable agreement . . . ."). Furthermore, Nova Mud admits that the 2019 TOS was publicly available prior to the inception of this case. *See generally* ECF Nos. 54, 65. The Court therefore finds that although Nova Mud is a non-signatory to the agreement, it should nonetheless have completed its own due diligence. Instead of relying on the word of a party to whom it is adverse, Nova Mud should have completed its own investigation, and discovered and presented the 2019 TOS in its initial motion.

The Court will consider the instant Motion as one for reconsideration. However, as it is an interlocutory order, the Court will review the Motion under Rule 54(b). As mentioned previously, the Tenth Circuit has not cabined district courts' discretion regarding Rule 54, stating that "district courts generally remain free to reconsider their earlier interlocutory orders." *Been*, 495 F.3d at 1225. In the Tenth Circuit, "law of the case doctrine has no bearing on the revisiting of interlocutory orders, even when a case has been reassigned from one judge to another." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1252 (10th Cir. 2011) (citing *Been*, 495 F.3d at 1225). Therefore, a court can select the standard of review for a motion to reconsider an interlocutory order. The Court may either:

> (i) review the earlier ruling de novo and essentially reanalyze the earlier motion from scratch; (ii) review the ruling de novo but limit its review; (iii) require parties to establish one of the law-of-the-case grounds; or (iv) refuse to entertain motions to reconsider altogether.

*Chandhok v. Companion Life Ins. Co.*, 555 F. Supp. 3d 1092, 1117 (D.N.M. 2021).

Here, the Court has previously thoroughly addressed the arbitrability of the instant case, which augurs against de novo review. *See* ECF Nos. 18, 47. The ideals of judicial economy require parties to bring all arguments in their initial motions, and not dispose of cases piecemeal. However, the Court never addressed the 2019 TOS in its previous orders. *Id.* Additionally, the Court finds

that while Plaintiff has been in the unfortunate position of reasonably relying on the Court's *two* prior orders denying compelled arbitration, and discovery has commenced, the belatedly produced evidence is highly probative. Moreover, although discovery has commenced, it has not yet finished, ECF No. 69, and Nova Mud filed its Motion prior to the beginning of discovery, ECF No. 54. The progress and posture of the case are thus not fatal to Nova Mud's Motion. *See Chandhok*, 555 F. Supp. 3d at 1116–18. For these reasons, the Court will review Nova Mud's right to its requested relief de novo, and for the reasons discussed below, will grant the Motion.

However, because of the delay caused by RUSCO, the Court will order RUSCO to show cause as to why it should not pay attorney's fees for the cost of briefing *two* unnecessary motions to compel arbitration.

## II.     Whether Nova Mud Waived Its Right to Compel Arbitration

Plaintiff further argues that even if Defendants once had the right to compel arbitration, Nova Mud has since waived that right by failing to conduct basic due diligence. ECF No. 59 at 6–11. Nova Mud, meanwhile, maintains that it reasonably relied on RUSCO's sworn testimony regarding the applicable TOS, and has consistently sought to compel arbitration. ECF No. 65 at 7–9.

A party may indeed waive their rights under an arbitration clause. *Metz v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1489 (10th Cir. 1994). In assessing whether waiver has occurred, a court should consider

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceeding; [and] (5) "whether important intervening steps

[e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place" . . . .

*Id.* (quoting *Peterson v. Shearson/American Express*, 849 F.2d 464, 467–68 (10th Cir. 1988)); *see also Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1158–59 (D. Colo. 2012), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013). Waiver "is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right," not the prejudice to the other party. *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). Courts must not blindly prefer arbitration to litigation:

> [A] court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration.

*Id.* at 1713 (citation omitted).

Here, the Court observes that Nova Mud promptly filed its earlier motion to compel arbitration as part of its first responsive pleading. *See* ECF Nos. 1, 8. To the extent that Nova Mud waited five months after learning of the 2019 TOS to file the instant Motion, ECF Nos. 45, 54, the Court finds this was reasonable given RUSCO's pending motion asking for the same relief, ECF No. 27, which was resolved only one month[3] prior to the filing of the instant Motion, ECF No. 47.

Plaintiff argues that Nova Mud indicated its intent to litigate, as opposed to compelling arbitration, by filing a third-party complaint against RUSCO. ECF No. 59 at 9. However, the Court finds that this act cuts both ways—as Nova Mud explains in its reply, this was at best an indication of its intent to litigate against *RUSCO*, with whom Nova Mud lacks an arbitration agreement. ECF

---

[3] The Court notes that this month elapsed during the winter holiday season.

No. 65 at 9. To the extent that any unnecessary discovery occurred due to Nova Mud's failure to conduct timely due diligence, Nova Mud did twice attempt to staunch the bleeding by filing motions to stay.[4] ECF Nos. 70, 74. Plaintiff's argument is, therefore, unavailing. The Court finds that Nova Mud has consistently indicated its intent to arbitrate and has thus not waived its right to compel arbitration.

### III. Whether the Terms Are Effective

The 2019 TOS state in relevant part that "[i]n the interest of resolving disputes between [Plaintiff] and RigUp, or [Plaintiff] *and RigUp's customers*, in the most expedient and cost effective manner, [Plaintiff] and RigUp agree that every dispute arising in connection with these Terms will be resolved by binding arbitration." ECF No. 45 at 29 (emphasis added); *see also* ECF No. 54 at 35. The earlier TOS, by contrast, made no mention of "customers." *See* ECF No. 9-1 at 24 ("In the interest of resolving disputes between [Plaintiff] and RigUp in the most expedient and cost effective manner, [Plaintiff] and RigUp agree that every dispute arising in connection with these Terms will be resolved by binding arbitration.").

Plaintiff argues, however, that even if the Court considers the 2019 TOS, it did not become effective as RUSCO failed to provide legally mandated notice. ECF No. 59 at 11–15. In particular, Plaintiff contends that RUSCO was required to provide notice of material changes "via email or on the Service" at least 30 days before the change becomes effective. *Id.* at 11. Plaintiff contends that notice via the "Service" includes only notice via the "RigUp application," which was never provided. *Id.* at 3. Nova Mud, meanwhile, contends that merely posting the new terms online was

---

[4] The magistrate judge—very reasonably, given the record in the case—opted not to delay discovery further, but instead opted for a flexible schedule that took into account the Court's busy docket. *See* ECF No. 73.

sufficient, as the "Service" includes the relevant website. ECF No. 65 at 12. Both parties have agreed that Texas contract law applies. *See* ECF No. 47 at 7–8.

Plaintiff is indignant at Nova Mud's reading of the agreement, complaining that "it would hold Plaintiff to a higher standard than Nova [Mud] holds itself. It claims Plaintiff had the burden through 'constructive knowledge' . . . to constantly scour for changes to the Terms of Service on [RUSCO's] website, but Nova [Mud] refused to do exactly that for over two years!" ECF No. 59 at 13. The Court is sympathetic to this asymmetry.

However, the Court observes that the 2016 TOS, whose authenticity Plaintiff has not disputed, does define the "Service" to include the relevant website. ECF No. 9-1 at 11 ("[T]he Website, Apps, and [RigUp's] Internet services are, collectively, the 'Service[.]'"); *see also* ECF No. 11. Defendant even pointed out this definition of the "Service" in its Motion, ECF No. 54 at 9, and Plaintiff simply failed to address the issue, *see generally* ECF No. 59.

Plaintiff does not dispute that the 2019 TOS was indeed posted to the relevant website in August 2019. *See* ECF No. 59 at 6 n.10, 10. Further, Plaintiff alleges that RUSCO processed Plaintiff's timesheets, and that Plaintiff continued working for Nova Mud through around December of 2019. *See* ECF No. 59 at 6. Therefore, even under Plaintiff's version of events, the Court finds that the 2019 TOS became effective in September of 2019, over a year prior to the inception of this lawsuit, and that Plaintiff became bound by them as soon as he used RUSCO's website thereafter—likely in or before November of 2019.[5] *See* ECF No. 59 at 2, 11-15; *see also Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984) ("When there is no ambiguity, it

---

[5] Whether such constructive notice is realistically sufficient to inform individual workers of their rights is beyond the scope of this order. *See Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 640 (Tex. 2018) ("Any arbitration doctrine forcing an unwilling party into arbitration must [] have some basis in fairness and consent.").

is the court's duty to give the words used their plain meaning."); ECF Nos. 1 at 3 (alleging Plaintiff worked for Defendants through around December 2019), 54 at 18 (declaring Plaintiff submitted a timesheet via RUSCO as late as November 2019 and applied to jobs via the application in 2020). Consequently, the Court will grant the Motion and order Plaintiff and Nova Mud to arbitrate.

## CONCLUSION

For the foregoing reasons, Defendant Nova Mud's Second Motion to Compel Arbitration, ECF No. 54, is hereby **GRANTED**.

1. It is **THEREFORE ORDERED** that the above-captioned cause shall be **STAYED** pending completion of the arbitration process.

2. It is **FURTHER ORDERED** that the parties shall **FILE** a status report every **90 days** from the date of this order.

3. It is **FURTHER ORDERED** that the parties shall **INFORM** the Court within **30 days** of completion of the arbitration proceedings.

4. It is **FINALLY ORDERED** that Defendant RUSCO shall **SHOW CAUSE** by **August 10, 2023**, as to why it should not be ordered to pay attorney's fees for the briefing of the first two motions to compel arbitration in this case.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE